[Cite as *Whitman v. Whitman*, 2026-Ohio-406.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

NATHAN L. WHITMAN,

    PLAINTIFF-APPELLANT,

v.

MELISSA J. WHITMAN (JACOBS),

    DEFENDANT-APPELLEE.

CASE NO. 8-24-47

OPINION AND
JUDGMENT ENTRY

---

Appeal from Logan County Common Pleas Court
Family Court Division
Trial Court No. DR 12 06 103

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: February 9, 2026

---

APPEARANCES:

    *Miranda A. Warren* for Appellant

**ZIMMERMAN, P.J.**

{¶1} Plaintiff-appellant, Nathan L. Whitman ("Nathan"), appeals the October 9, 2024 judgment entry of the Logan County Court of Common Pleas, Family Court Division, in a post-decree proceeding involving defendant-appellee, Melissa J. Whitman, now known as Melissa J. Jacobs ("Melissa"). For the reasons that follow, we affirm in part and reverse in part.

{¶2} Nathan and Melissa were married on April 9, 2005, and two children were born of the marriage. Nathan filed a complaint for divorce on June 8, 2012. The divorce was contentious. The magistrate's decision issued on January 21, 2014 noted that "during the course of this action, the parties were able to agree on virtually nothing, and the parties relied on the Court and the Magistrate to decide each and every issue." (Doc. No. 111). The judgment entry granting divorce (hereinafter "divorce decree") was entered on June 30, 2014.

{¶3} The divorce decree designated Melissa as the residential parent and legal custodian of the two minor children "subject to the right of reasonable visitation by [Nathan] with said children as the parties agree, and if they cannot agree then pursuant to the Standard Visitation Guidelines, Local Rules of Court, Common Pleas Court of Logan County, Ohio." (Doc. No. 126). Nathan was ordered to pay child support in the amount of $617.43 a month, effective December

4, 2012. In tax years 2014 and thereafter, Nathan was granted the right to claim the parties' oldest child as a dependent for tax purposes, and Melissa was entitled to claim the parties' youngest child. The parties were ordered to equally share in the payment of the children's health-related expenses.

{¶4} On March 15, 2021, Nathan filed a contempt motion alleging that Melissa denied him parenting time in violation of the divorce decree.

{¶5} On June 2, 2021, Melissa filed a contempt motion alleging that Nathan violated the divorce decree by (1) failing to pay $20,013.19 of Melissa's student loan debt; (2) failing to pay $400 in attorney fees to Melissa within 90 days after entry of the divorce decree; and (3) failing to consult with Melissa prior to filing his 2013 tax return. On August 27, 2021, Melissa filed an amended contempt motion to include an additional allegation that Nathan violated the divorce decree by failing to pay his share of the children's health-related expenses in the amount of $2,099.50.

{¶6} On September 2, 2021, Nathan filed a motion to reallocate parental rights and designate him as the residential parent and legal custodian of the parties' minor children. In the alternative, Nathan requested that the trial court approve his proposed shared parenting plan.

{¶7} On April 11, 2022, Melissa filed a second amended contempt motion stating that the amount of Nathan's share of the children's health-related expensed increased to $2,242.30.

{¶8} The trial court held evidentiary hearings over the course of several months. On February 14, 2024, the trial court issued a temporary order naming Nathan as the temporary custodian for the parties' youngest child, M.W.[1]

{¶9} On October 9, 2024, the trial court entered a judgment modifying the allocation of parental rights and responsibilities for the care of M.W. Specifically, the trial court designated Nathan as the residential parent and legal custodian of M.W. and ordered that Melissa shall enjoy parenting time. The trial court terminated Nathan's obligation to pay child support effective February 14, 2024.

{¶10} As to the parties' contempt motions, the trial court found that Melissa is not in contempt for denying Nathan parenting time. The trial court further found that Nathan is not in contempt for failing to pay his share of Melissa's student loan debt. However, the trial court did find Nathan in contempt for (1) failing to timely pay $400 in attorney fees to Melissa as ordered in the divorce decree; (2) failing to timely pay his share of the children's health-related expenses; and (3) failing to file his 2013 taxes in accordance with the divorce decree and further failing to share the refund with Melissa.

{¶11} On November 6, 2024, Nathan filed a notice of appeal. Nathan raises nine assignments of error for our review. For ease of discussion, we will address some of the assignments of error together.

---

[1] The parties' oldest child turned 18 and graduated from high school in May 2022.

{¶12} Before proceeding with the merits, we note that Melissa has failed to file an appellee's brief in this case. In the absence of an appellee's brief, App.R. 18(C) provides that we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." This rule is particularly relevant in its application to some of the issues presented on appeal.

**First Assignment of Error**

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Failed To Follow Binding Law When Determining That There Was No Cause To Impute Appellee With The Ability To Earn Additional Income.**

**Second Assignment of Error**

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Failed To Follow Binding Law When The Trial Court Deviated The Appellee's Child Support Obligation.**

{¶13} In his first and second assignments of error, Nathan challenges the trial court's calculation of Melissa's child support obligation. Specifically, Nathan argues that the trial court erred by not imputing potential income to Melissa. Nathan further argues that the trial court erred by deviating from the statutory amount of child support without first considering the factors set forth in R.C. 3119.23.

*Standard of Review*

{¶14} "[A] trial court has broad discretion in determining child support obligations, which will not be disturbed absent an abuse of discretion." *Miller v.*

*Dendinger*, 2021-Ohio-546, ¶ 44 (3d Dist.). An abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶15}** When issuing an order of child support, the trial court "shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119 of the Revised Code." R.C. 3119.02. "There is a 'rebuttable presumption' that the amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is the correct amount of child support due." *Warner v. Warner*, 2003-Ohio-5132, ¶ 16 (3d Dist.), citing R.C. 3119.03. However, the trial court may deviate from the statutory amount of child support if, after consideration of the factors in R.C. 3119.23, it determines that the statutory amount "would be unjust or inappropriate and therefore not be in the best interest of the child." R.C. 3119.22.

**{¶16}** "To calculate the amount of child support owed, the domestic-relations court must first determine the annual income of each parent." *Ayers v. Ayers*, 2024-Ohio-1833, ¶ 13. "Income" means either of the following:

(a) For a parent who is employed to full capacity, the gross income of the parent;

(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

R.C. 3119.01(C)(10). "Potential income" for a parent who is voluntarily unemployed or voluntarily underemployed includes "[i]mputed income that the court . . . determines the parent would have earned if fully employed." R.C. 3119.01(C)(18)(a).

{¶17} In this case, the trial court calculated the amount of child support owed by first determining the annual income of each parent. In particular, the trial court found that Nathan's annual income is $43,409.60, and Melissa's annual income is $38,688. The trial court further found that there is "no cause to impute [Melissa] with the ability to earn additional income." (Doc. No. 273). The trial court then determined that a deviation from the statutory amount of child support is appropriate.

{¶18} On appeal, Nathan argues that the trial court abused its discretion by not imputing potential income to Melissa. Nathan contends that "no testimony or evidence" was presented "as to why [Melissa] is unable to work a forty-hour work week." (Appellant's Brief at 8). We disagree.

{¶19} The record shows that Melissa is a registered nurse and works at a local hospital. Melissa testified that she works 24 hours a week, consisting of three eight-hour shifts. "[O]ne week will be Tuesday, Thursday, Friday; the next will be Tuesday, Wednesday, Thursday." (Aug. 29, 2023 Tr. at 515). As to her annual income, Melissa testified that she earned $31,484 in 2020, $30,315.03 in 2021, and

$37,287.24 in 2022. Melissa's most-recent paystub in 2023 indicated income at an hourly rate of $33.36. Melissa explained that she earned approximately five hours of overtime during that pay period. Melissa testified that overtime is not consistent and that she is "on-call every 5th or 6th weekend." (*Id.* at 517). On cross-examination, Melissa was asked if anything prevented her from working fulltime. Melissa answered, "My youngest child. That's why I chose to work part-time." (Feb. 12, 2024 Tr. at 570).

{¶20} Earlier in her testimony on direct examination, Melissa testified that—in addition to parenting her and Nathan's youngest child, M.W.—their oldest child (who is a young adult) resides in her home. Melissa further testified that she is remarried to Jacob R. Jacobs ("Jacob") and they have a five-year-old child together. Jacob also has two children from a prior relationship and he enjoys shared parenting. Melissa testified that Jacob works Sunday through Wednesday, and has every Thursday and Friday off from work.

{¶21} Based on the foregoing, we conclude that the trial court did not abuse its discretion by not imputing potential income for Melissa. The record demonstrates that Melissa has a busy household and is employed to full capacity by working 24 hours a week outside the home. In fact, prior to extending Nathan's summer parenting time with M.W., the trial court noted that Melissa's home is "a busier household" and "there's a lot more activity there because she's got more kids under her roof than [Nathan]." (Mar. 22, 2023 Tr. at 220-221). Consequently, the

decision to not impute Melissa with the ability to earn additional income is not unreasonable, arbitrary, or unconscionable.

{¶22} Turning to the trial court's decision to deviate from the statutory amount of child support, R.C. 3119.22 provides that a court may deviate from the statutory amount if, after consideration of the factors set forth in R.C. 3119.23, the court determines that the statutory amount "would be unjust or inappropriate and therefore not be in the best interest of the child." R.C. 3119.22. Moreover, R.C. 3119.23 provides as follows:

> The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code:
>
> (A) Special and unusual needs of the child or children, including needs arising from the physical or psychological condition of the child or children;
>
> (B) Other court-ordered payments;
>
> (C) Extended parenting time or extraordinary costs associated with parenting time, including extraordinary travel expenses when exchanging the child or children for parenting time;
>
> (D) The financial resources and the earning ability of the child or children;
>
> (E) The relative financial resources, including the disparity in income between parties or households, other assets, and the needs of each parent;
>
> (F) The obligee's income, if the obligee's annual income is equal to or less than one hundred per cent of the federal poverty level;

(G) Benefits that either parent receives from remarriage or sharing living expenses with another person;

(H) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(I) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(J) Extraordinary work-related expenses incurred by either parent;

(K) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(L) The educational opportunities that would have been available to the child had the circumstances requiring a child support order not arisen;

(M) The responsibility of each parent for the support of others, including support of a child or children with disabilities who are not subject to the support order;

(N) Post-secondary educational expenses paid for by a parent for the parent's own child or children, regardless of whether the child or children are emancipated;

(O) Costs incurred or reasonably anticipated to be incurred by the parents in compliance with court-ordered reunification efforts in child abuse, neglect, or dependency cases;

(P) Extraordinary child care costs required for the child or children that exceed the maximum state-wide average cost estimate as described in division (P)(1)(d) of section 3119.05 of the Revised Code, including extraordinary costs associated with caring for a child or children with specialized physical, psychological, or educational needs;

(Q) Any other relevant factor.

{¶23} Here, the trial court found that "the statutory child support obligation should be $458.45 per month" under the child support computation worksheet. (Doc. No. 278). However, the trial court determined that a deviation is warranted due to Melissa's "[e]xtended parenting time or extraordinary costs associated with parenting time" and "[s]ignificant in-kind contributions . . . including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing." (Doc. No. 278). The trial court found that "to require payment of child support at the statutory rate would be unjust, inappropriate, and not in the best interest of the parties' minor child." (*Id.*). The trial court stated as follows:

> The Court FURTHER FINDS that Mother provides, and has always provided, sporting equipment, clothing, transportation, and other financial support for [M.W.], including out of pocket healthcare expenses that well exceed the cash medical support amount and the amount she has requested for reimbursement from Father. The Court FINDS, therefore, that Mother IS ENTITLED TO A DEVIATION in child support to reduce her support obligation to $400.00 per month, and ADDITONALLY IS ENTITLED TO A DEVIATION of cash medical support at 100% of the cash medical obligation.

(Doc. No. 273).

{¶24} Based on our review of the record, we cannot say that the trial court's decision to deviate from the statutory amount of child support is an abuse of discretion. The trial court considered the factors set forth in R.C. 3119.23 prior to determining that a deviation was appropriate. Furthermore, the record supports the trial court's decision to deviate from the statutory amount of child support. Melissa

testified to purchasing a vehicle for M.W.'s use, providing clothing for M.W., and historically providing transportation for M.W. to her extracurricular activities.

**{¶25}** Accordingly, Nathan's first and second assignments of error are overruled.

### Third Assignment of Error

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Found The Appellant In Contempt.**

### Fourth Assignment of Error

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Issued The Penalties For Contempt.**

### Fifth Assignment of Error

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Issued The Purge Condition Contrary To Binding Law.**

**{¶26}** In his third, fourth, and fifth assignments of error, Nathan argues that the trial court erred by finding him in contempt, imposing penalties for contempt, and issuing a purge condition contrary to law.

*Standard of Review*

**{¶27}** A court may hold a party in contempt for failing to comply with its orders. *See* R.C. 2705.02(A) (stating that a person who disobeys a court's order or judgment "may be punished as for a contempt"). The standard of review of a trial court's decision on a contempt motion is abuse of discretion. *Heimann v. Heimann,*

2022-Ohio-241, ¶ 85 (3d Dist.). Similarly, "the trial court's imposition of penalties for contempt is reviewed for an abuse of discretion." *Wilson v. Jones*, 2013-Ohio-4638, ¶ 32 (3d Dist.). As previously stated, an abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶28}** "A trial court has inherent authority to enforce its prior orders through contempt." *Heimann* at ¶ 86. *See* R.C. 2705.02(A). "'Under Ohio law, contempt of court consists of two elements.'" *Heimann* at ¶ 86, quoting *Cichanowicz v. Cichanowicz,* 2013-Ohio-5657, ¶ 88 (3d Dist.). The first element is a finding of contempt and the second element is the imposition of a penalty or sanction, such as a jail sentence or fine. *Cichanowicz* at ¶ 88. "The imposition of a sanction, albeit suspended to afford the contemnor an opportunity to purge himself of the contempt, satisfies the second element of contempt." *Id.*

**{¶29}** "'A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders.'" *Heimann,* 2022-Ohio-241, at ¶ 87 (3d Dist.), quoting *Moraine v. Steger Motors*, 111 Ohio App.3d 265, 268 (2d Dist. 1996). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "It is not necessary to show willful disobedience

for a finding of contempt in cases where it is alleged that a court order was violated." *Heimann* at ¶ 87.

**{¶30}** "'Factual findings underpinning the trial court's contempt judgment will not be reversed if they are supported by some competent, credible evidence.'" *Heimann* at ¶ 88, quoting *Wilson*, 2013-Ohio-4638, at ¶ 12 (3d Dist.). "'The trial court is in the best position to judge the credibility of testimony because it is in the best position to observe the witness' gestures and voice inflections.'" *Heimann* at ¶ 88, quoting *Wilson* at ¶ 12.

**{¶31}** In this case, the trial court found Nathan in contempt for (1) failing to timely pay $400 in attorney fees to Melissa; (2) failing to timely pay his share of the children's health-related expenses; and (3) failing to file his 2013 taxes in accordance with the divorce decree and further failing to share the refund with Melissa.

**{¶32}** In his third assignment of error, Nathan argues that the contempt charges related to payment of the $400 in attorney fees and his share of the children's health-related expenses are "moot" because he "made payment prior to the final hearing." (Appellant's Brief at 14). As to the contempt charge related to filing his 2013 tax return without consulting Melissa, Nathan claims that Melissa "is guilty of the same" since she filed her 2013 tax return without consulting him. (*Id.* at 15). Nathan further claims that "there was no evidence that [Melissa] did not

receive a [refund], or some benefit from filing individually as she failed to provide any proof to dispute the same." (*Id.*).

{¶33} The divorce decree ordered Nathan to pay $400 in attorney fees to Melissa within 90 days after entry of the decree. The record shows that the divorce decree was entered on June 30, 2014. Melissa filed her contempt motion on June 2, 2021 alleging that Nathan had not paid the $400 in attorney fees as ordered in the divorce decree. When the matter was heard by the trial court, Nathan admitted that he did not pay the $400 in attorney fees as ordered by the court. Moreover, Melissa testified that she received payment from Nathan on September 23, 2022. Since Nathan did not pay the $400 in attorney fees to Melissa until *eight years* after he was ordered to do so, the trial court did not abuse its discretion by finding him in contempt.

{¶34} As to payment of his share of the children's health-related expenses, the parties' divorce decree ordered as follows:

> (4) HEALTH INSURANCE: [Nathan] shall maintain health insurance coverage for the benefit of the parties' minor children if available through employment at a reasonable or no cost. Any and all uninsured ordinary and extraordinary medical, dental, optical, and pharmaceutical, including orthodontia and psychological expenses incurred on behalf of the minor children will be divided with [Nathan] being responsible for 50% of said expenses and [Melissa] being responsible for 50% of said expenses.

(Doc. No. 126). Melissa filed a second amended contempt motion on April 11, 2022 alleging that Nathan failed to pay his share of the children's health-related expenses

in the amount of $2,242.30 despite "multiple demands for payment." (Doc. No. 199).

{¶35} Nathan testified that he did not learn of the children's health-related expenses until after he filed his contempt motion on March 15, 2021 alleging that Melissa denied him parenting time. In particular, on or about June 8, 2021, Melissa's attorney sent a letter informing Nathan of his share of the children's health-related expenses. On or about July 21, 2021, a follow-up letter was sent demanding payment of Nathan's share of the children's health-related expenses.

{¶36} In response, Melissa testified that she did not give Nathan the 2017 orthodontia bill until 2021 because Nathan stated that the child did not need braces and he would not pay for them. Melissa further testified that she received payment from Nathan for his share of the children's health-related expenses on September 23, 2022.

{¶37} In finding that Nathan did not timely pay his share of the children's health-related expenses, the trial court noted that "[Melissa] did not send statements to [Nathan] regarding braces until 2021, nonetheless, [Nathan] did not pay them upon request." (Doc. No. 273). Notably, Nathan did not make payment to Melissa until more than one year later—on September 23, 2022. Therefore, the trial court did not abuse its discretion by finding Nathan in contempt for failing to timely pay his share of the children's health-related expenses.

**{¶38}** With respect to the filing of the 2013 taxes, the divorce decree ordered as follows:

> (14) <u>2013 INCOME TAXES:</u> [Nathan] and [Melissa] shall file their federal, state and local income taxes for the 2013 tax year in such a way as to maximize their proceeds. The proceeds are marital property and shall be divided equally.

(Doc. No. 126). Melissa filed a contempt motion on June 2, 2021 alleging that Nathan unilaterally filed his 2013 tax return in violation of the divorce decree.

**{¶39}** At a hearing held on March 22, 2023, Nathan testified on direct examination that he did not remember how he filed his 2013 taxes. On cross-examination, Nathan was provided with a copy of his 2013 federal income tax return. After reviewing the tax return, Nathan testified that he claimed both of the parties' children as his dependents in 2013 and was issued a refund of $8,533. Nathan further testified that he did not remember if he was in arrears in his obligation to pay child support at the time he filed his 2013 tax return. Melissa testified that the refund was seized and applied to Nathan's child support arrearages.

**{¶40}** In finding Nathan in contempt for unilaterally filing his 2013 tax return, the trial court noted that the divorce decree ordered the parties to file their 2013 tax returns "in a manner to maximize their proceeds, which would be divided equally." (Doc. No. 273). The trial court further noted that Nathan filed his 2013 tax return without consulting Melissa and received a refund in the approximate amount of $8,500, which was intercepted and applied to his child support arrearages.

Since Nathan received the entire benefit of the 2013 taxes, the trial court found that "[Melissa] remains entitled to payment from [Nathan] on her share of that marital property in the amount of $4,250.00." (*Id.*). Even though Nathan argues that Melissa may have received some benefit from filing her 2013 tax return separately, Melissa testified that she was required to pay $1,000 in taxes. Therefore, the trial court did not abuse its discretion by finding Nathan in contempt for failing to file his 2013 taxes in accordance with the divorce decree and further failing to share the refund with Melissa.

{¶41} Based on the foregoing, we conclude that the trial court acted well within its discretion in finding Nathan in contempt. Accordingly, we overrule Nathan's third assignment of error.

{¶42} After finding Nathan in contempt, the trial court sentenced him to serve 45 days in jail (15 days for each charge). The trial court suspended the 45-day jail sentence to give him an opportunity to purge the contempt. The trial court also awarded attorney fees to Melissa in the amount of $1,500 ($500 for each charge).

{¶43} In his fourth assignment of error, Nathan challenges the penalties imposed by the trial court following its finding of contempt. Specifically, Nathan asserts that the trial court erred by sentencing him to 45 days in jail since it is "15 days more than the jail time a trial court may sentence an offender for a first-time contempt offense pursuant to R.C. 2705.05." (Appellant's Brief at 13). As to the

award of attorney fees, Nathan argues that Melissa "provided absolutely no evidence of attorney fees as it pertained to the contempt charges." (*Id.*).

**{¶44}** Despite Nathan's assertion to the contrary, this is his second offense of contempt. As noted by the trial court in its October 9, 2024 judgment, Nathan was found in contempt of court in the parties' divorce decree for failing to make regular child support payments. The divorce decree states as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff, Nathan Whitman, is found in CONTEMPT OF COURT for failure to make regular child support payments. Plaintiff can purge the contempt finding and avoid any punishment by maintaining employment and making full child support and arrearage payments for a period of 90 days after the final divorce is entered.

(Doc. No. 126).

**{¶45}** Under R.C. 2705.05(A), if a person is found guilty of contempt, the court may impose any of the following penalties:

> (1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
>
> (2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than *sixty days in jail*, or both;
>
> (3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

(Emphasis added.) Since this is Nathan's second offense of contempt, the trial court did not abuse its discretion by imposing a penalty of 45 days in jail.

**{¶46}** As to the award of attorney fees, Ohio courts have long held that a trial court has discretion to award reasonable attorney fees against a party found guilty of civil contempt. *State ex rel. Fraternal Order of Police v. Dayton*, 49 Ohio St.2d 219 (1977), syllabus. In post-decree actions for contempt, a local rule of court provides that "[t]he Court may award attorney fees to the prevailing party in an amount not more than $400.00 without the necessity for professional testimony regarding fees." Logan C.P., Loc.R. DR 5.06(B).

**{¶47}** In its October 9, 2024 judgment, the trial court noted that no evidence was presented regarding Melissa's request for attorney fees. Nonetheless, the trial court awarded Melissa a total of $1,500 as being "a reasonable award for attorney fees under the circumstances." (Doc. No. 273). We conclude that the trial court abused its discretion by awarding attorney fees in excess of $400 without evidence regarding the reasonableness of the amount. *See Kaufman v. Kaufman,* 2006-Ohio-603, ¶ 33 (3d Dist.) (finding no abuse of discretion where the trial court based its award of attorney fees on a local rule of court stating that $300 is the presumptive reasonable amount for attorney fees in contempt actions). Therefore, we reverse the trial court's judgment to the extent that it awarded attorney fees in excess of $400.

**{¶48}** In his fifth assignment of error, Nathan argues that the trial court erred by issuing a purge condition contrary to law. In particular, Nathan argues that requiring him to follow "all court orders herein throughout the remainder of time

-20-

that the parties are subject to the Orders herein" does not afford him the opportunity to purge himself of the contempt. (Appellant's Brief at 11). We agree.

**{¶49}** "It is well within the authority of the trial court to suspend a sentence to afford an accused contemnor an opportunity to purge himself of the contempt." *Frey v. Frey*, 2011-Ohio-6012, ¶ 17 (3d Dist.). For this reason, "[t]he contemnor is said to carry the keys of his prison in his own pocket . . . since he will be freed if he agrees to do as ordered." *Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250, 253 (1980). However, a contempt order suspending punishment on the condition that the contemnor comply in the future with the terms of all court orders does not properly allow for purging. *See Tucker v. Tucker,* 10 Ohio App.3d 251, 252 (10th Dist. 1983). *See also Lyons v. Lyons,* 1987 Ohio App. LEXIS 6181, *10 (3d Dist. Mar. 19, 1987) (reversing the trial court's contempt order that suspended a jail sentence on the condition that the contemnor "not violate the orders of the court in the future").

**{¶50}** Here, the trial court suspended the 45-day jail sentence "to give [Nathan] an opportunity to purge the contempt." (Doc. No. 273). The trial court stated as follows:

> Orders to satisfy amounts owed to [Melissa] are contained hereafter, thus payment of those amounts SHALL NOT be considered as purge conditions [Nathan] must meet in order to purge his contempt.
>
> [Nathan] is considered to have purged his contempt by following all Court Orders herein throughout the remainder of time that the Parties are subject to the Orders herein, thus the date that [M.W.] is deemed

-21-

to have become legally emancipated and [Nathan] has satisfied his share of the student loan debt, pursuant to the Orders herebelow.

(*Id.*).   The trial court's purge condition requiring Nathan to comply with all court orders in the future is void. *In re C.L.W.,* 2022-Ohio-1273, ¶ 57 (12th Dist.) (holding that the trial court's purge condition regulating future conduct of the contemnor is void).   "Such purge conditions are void because they 'can have no effect since any effort to punish a future violation of the . . . order would require new notice, hearing, and determination' because of the requirements of due process." *Id.* at ¶ 58, quoting *Tucker* at 252.   Therefore, we conclude that the trial court abused its discretion by issuing a purge condition requiring Nathan to comply with all court orders in the future.   This purge condition is void and does not properly allow Nathan the opportunity to purge the contempt.

{¶51} Accordingly, we sustain Nathan's fifth assignment of error.

**Sixth Assignment of Error**

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Committed Reversible Error And Failed To Follow Binding Law In Modifying The Terms Of The Parties' Judgment Entry Granting Divorce.**

**Seventh Assignment of Error**

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Determined That It Had Continuing Jurisdiction To Modify The Terms Of The Parties' Judgment Entry Granting Divorce.**

**{¶52}** In his sixth and seventh assignments of error, Nathan challenges the trial court's findings regarding the outstanding student loan debt. Specifically, Nathan argues that the trial court erred when it determined that it had jurisdiction over the student loan debt. Nathan further argues that the trial court violated R.C. 3105.171(I) by modifying the parties' divorce decree with respect to the student loan debt.

*Standard of Review*

**{¶53}** Appellate review of trial court determinations in domestic relations cases generally entails the abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). "Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, . . . it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." *Booth* at 144. Again, an abuse of discretion suggests that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore*, 5 Ohio St.3d 217 at 219.

*Analysis*

**{¶54}** Paragraph (9) of the parties' divorce decree divided the student loan debt as follows:

> There presently exists an indebtedness/obligation for Defendant/Wife's student loans in the approximate amount of $32,887.00. Plaintiff/Husband shall assume and pay $20,013.29 of

said debt, and interest at the same rate as the student loan debt, and his obligation shall commence August 1, 2014. Defendant/Wife shall assume and pay $12,873.81 of said debt, and both parties shall indemnify and hold the other harmless with respect to the same. This student loan obligation shall be considered to be a Domestic Order, and thus not dischargeable in bankruptcy. The Court shall retain jurisdiction over this issue, as well as the issue of spousal support as set forth in paragraph (13) below.

(Doc. No. 126). On June 2, 2021, Melissa filed a contempt motion alleging, among other things, that Nathan failed to pay his portion of the student loan debt.

{¶55} When the matter was heard by the trial court, Nathan testified on direct examination that he would pay his portion of the student loan debt on a monthly basis if provided with information on how to do so. After cross-examination, the trial court questioned Nathan as follows:

THE COURT: Okay. In regards to the student loans, you testified that you did not have any information to know who to pay so that is your excuse for not taking care of that order.

Did I understand that correctly?

[Nathan]: Yes, ma'am.

THE COURT: And I understand that you didn't ask her. You just assumed that she would give you the information so that you could take care of honoring the court order; did I understand that correctly?

[Nathan]: Yes, Your Honor.

(Mar. 22, 2023 Tr. at 181-182).

{¶56} Melissa testified that the student loans have been in deferment or forbearance since June 2014 and are not currently due and owing. Melissa further

testified that, even though the student loans have been in deferment and/or forbearance since the parties' divorce, interest has accrued on the loans. Melissa stated that she has not made any payments on the student loan debt. When asked on cross-examination when the first payment is due, Melissa answered, "I want to say it's 2026 as of right now." (Aug. 29, 2023 Tr. at 374).

{¶57} In its October 9, 2024 judgment, the trial court found that it retained jurisdiction over the issue of the student loan debt and that the parties "are responsible for the original amounts identified in their decree, plus a pro rata share of the interest in accordance with the terms of the loan." (Doc. No. 273). Even though the trial court did not find Nathan in contempt for failing to pay his portion of the student loan debt, the trial court determined that

> the terms of the Parties' decree were not sufficiently clear to ensure that the Parties knew their exact obligations and deadlines to meet them. The Parties have essentially deferred the obligation by an implicit agreement due to their lack of communication and mutual inaction, allowing the debt to remain or possibly accrue interest in the time since their separation.

(*Id.*). To clarify the parties' obligations and deadlines with respect to the student loan debt, the trial court ordered as follows:

> IT IS FURTHER ORDERED that, upon the student loan debt being removed from deferment, the Parties SHALL be equally responsible to pay any additional costs and fees incurred as a result of their shared failure to make payments on the obligation.
>
> IT IS ORDERED that [Melissa] SHALL notify [Nathan], within 30 days of receiving notice regarding the deferment or receiving this Order, whichever occurs later in time, of all terms necessary regarding

-25-

the payment obligations on the loan being reinstated and resuming including the date they are reinstated or shall resume, the amount of Nathan's obligation that must be paid including interest and the interest rate applied to the obligation, and the day [Melissa] must have [Nathan's] payment by each month (e.g. the 5th, the 15th, or the 30th) in order for [Melissa] to timely make the full payment. Thereupon, [Nathan] SHALL pay [Melissa] his share of the obligation each month on or before the day [Melissa] identified as the day she would need to receive payment by in [o]rder to meet her obligation.

IT IS FURTHER ORDERED that, upon receiving notice from [Melissa] that the deferment is being lifted, [Nathan] MAY ALTERNATIVELY pay [Melissa] the entire remaining balance owed by [Nathan] including amortized interest amounts to satisfy [Nathan's] obligation, at which point he will no longer be obligated on the debt.

(Doc. No. 273).

{¶58} On appeal, Nathan argues that the trial court "inappropriately found that it had continuing jurisdiction regarding [Melissa's] student loans." (Appellant's Brief at 18). Nathan contends that the divorce decree "limit[ed] the trial court's jurisdiction until June 30, 2016." (*Id.* at 22). In support of this contention, Nathan relies on paragraph (13) of the divorce decree which states that "the Court shall retain jurisdiction over the issue of spousal support for two years after the filing of this Decree." (Doc. No. 126). Nathan further argues that the trial court improperly modified the terms of the divorce decree "without the express written consent" of the parties in violation of R.C. 3105.171(I). (Appellant's Brief at 22).

{¶59} We reject Nathan's argument that the trial court did not have continuing jurisdiction over the issue of the student loan debt. Paragraph (9) of the

parties' divorce decree addresses the student loan debt and provides that "[t]he Court shall retain jurisdiction over this issue, as well as the issue of spousal support set forth in paragraph (13) below." (Doc. No. 126). In contrast, paragraph (13) addresses spousal support and limits the trial court's jurisdiction over that issue to two years. Moreover, on June 2, 2021, Melissa filed a contempt motion alleging that Nathan failed to pay his portion of the student loan debt. On June 10, 2021, Nathan was personally served with process. *See* Civ.R. 75(J) (stating that the continuing jurisdiction of the domestic relations court is invoked by the filing of a motion and service of process). Thus, the issue of the student loan debt was properly before the trial court.

{¶60} Additionally, we reject Nathan's argument that the trial court modified the parties' divorce decree in violation of R.C. 3105.171(I). In its entirety, R.C. 3105.171(I) provides that

> [a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses.

Here, the trial court did not modify the property division established in the divorce decree. Rather, the trial court determined that neither party complied with the provisions of the divorce decree because the student loan debt remained outstanding. Based on Nathan's testimony that he lacked information regarding how to make payments on the student loan debt, and the parties' failure to

communicate on the issue, the trial court decided to set forth a procedure for payment of the student loan debt. After a full and thorough review of the record, we conclude that the trial court's decision is not an abuse of discretion.

{¶61} Accordingly, Nathan's sixth and seventh assignments of error are overruled.

## Eighth Assignment of Error

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Admitted Unauthenticated Evidence.**

{¶62} In his eighth assignment of error, Nathan argues that the trial court abused its discretion by admitting evidence that was not properly authenticated. Specifically, Nathan argues that the trial court erred by allowing Melissa to authenticate documents produced by Nelnet—the servicing company for the student loans—because Melissa is not the "records keeper for Nelnet." (Appellant's Brief at 22). Nathan further argues that the trial court erred by allowing Melissa to authenticate a summary prepared by her attorney of the information produced by Nelnet since Melissa lacks "personal knowledge" of the data compiled in the summary. (*Id.* at 23).

### *Standard of Review*

{¶63} "Decisions regarding the admission of evidence are within the sound discretion of the domestic relations court and may not be reversed absent an abuse of discretion." *Koehler v. Koehler,* 2018-Ohio-4933, ¶ 45 (12th Dist.). Once again,

an abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

{¶64} Under Evid.R. 901(A), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Such evidence may be supplied by the testimony of a witness with knowledge. Evid.R. 901(B)(1). "This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *Morrison v. Robinson,* 2013-Ohio-453, ¶ 49 (12th Dist.). In other words, "[t]he authentication requirement contemplated by Evid.R. 901(A) invokes a very low threshold standard, requiring only sufficient foundational evidence for the trier of fact to conclude that the item is what the proponent claims it to be." *Weisbecker v. Weisbecker,* 2006-Ohio-5840, ¶ 22 (12th Dist.).

{¶65} Here, the record indicates that Melissa's attorney issued a subpoena duces tecum to Nelnet requiring it to produce copies of documents related to the "student loan balance of [Melissa] from January 1, 2014 to present." (Doc. No. 243). In response to the subpoena, Nelnet produced copies of promissory notes signed by Melissa and a transmittal letter stating that "[t]he copies provided are true and accurate reproductions of the original documents." (Exhibit KK). Nelnet also

produced an account summary, disbursement history, deferment and/or forbearance history, and payment history for the student loans.

{¶66} Melissa testified that she has knowledge of her student loans and that the documents produced by Nelnet accurately reflect the status of the student loan debt. Melissa further testified that her attorney prepared a summary of the information produced by Nelnet. The summary is a two-page spreadsheet that lists each student loan and delineates the loan amount, disbursement amount, disbursement date, interest rate, capitalized interest, principal balance, interest accrued, and outstanding balance. *See* Evid.R. 1006 (providing that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation"). Melissa testified that the summary accurately reflects the status of the student loan debt.

{¶67} We conclude that the documents produced by Nelnet and the corresponding summary were properly authenticated by Melissa. Consequently, the trial court did not abuse its discretion by admitting the documents and summary into evidence.

{¶68} Accordingly, Nathan's eighth assignment of error is overruled.

**Ninth Assignment of Error**

**It Was An Abuse Of Discretion And Against The Manifest Weight Of The Evidence When The Trial Court Failed To Follow Binding**

**Law When It Determined That The Appellee Was Entitled To Claim The Parties' Minor Child For Tax Purposes.**

**{¶69}** In his ninth assignment of error, Nathan argues that the trial court erred by allocating the tax emption to Melissa without any consideration of the factors set forth in R.C. 3119.82.

*Standard of Review*

**{¶70}** "'[T]he allocation of tax exemptions is a matter resting within the sound discretion of the trial and, therefore, will not be overruled absent an abuse of discretion.'" *Baker v. Deatrick*, 2024-Ohio-3058, ¶ 8 (3d Dist.), quoting *Boose v. Lodge,* 2003-Ohio-4257, ¶ 4 (3d Dist.). "'This discretion is both guided and limited by R.C. 3119.82.'" *Baker* at ¶ 8, quoting *Miller v. Dendinger*, 2021-Ohio-546, ¶ 54 (3d Dist.).

*Analysis*

**{¶71}** "R.C. 3119.82 provides that, when a trial court issues, modifies, or otherwise reconsiders a child support order, the court must decide which parent will claim the child as a dependent for federal income tax purposes." *Baker* at ¶ 9. "If the parties agree on which parent should claim the child as a dependent, then the court must designate that parent as the parent who may claim the child." *Id.* "If, however, the parties do not agree on which parent should claim the child, the court may award the tax exemption to the nonresidential parent 'only if the court determines that this furthers the best interest of the [child]' and the child support

-31-

payments are substantially current." *Id.*, quoting R.C. 3119.82. *See Miller* at ¶ 56 (noting that R.C. 3119.82 establishes a presumption in favor of allocating the tax exemption to the residential parent, but the tax exemption may be allocated to the nonresidential parent where it furthers the best interest of the child).

{¶72} In determining the best interest of the child, R.C. 3119.82 provides that the trial court "shall" consider a number of factors, including (1) any net tax savings, (2) the relative financial circumstances and needs of the parents and child, (3) the amount of time the child spends with each parent, (4) the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and (5) any other relevant factor concerning the best interest of the child.

{¶73} In this case, the trial court designated Nathan as the residential parent of M.W. and ordered Melissa to pay child support. Despite designating Nathan as the residential parent, the trial court allocated the tax exemption to Melissa as follows:

> IT IS FURTHER ORDERED that Mother IS HEREBY ENTITLED TO CLAIM [M.W.] as a dependent for purposes of filing taxes each and every year including the tax year 2023, if the parties have not already filed prior to the issuance of this Order; the tax year 2024 and each year moving forward.

(Doc. No. 273).

{¶74} There is nothing in the record to demonstrate that the trial court considered the factors set forth in R.C. 3119.82 prior to allocating the tax exemption to Melissa—the nonresidential parent. Moreover, there is nothing in the record to

show that allocating the tax exemption to the nonresidential parent furthers the best interest of the child. Therefore, the trial court's decision to allocate the tax exemption to Melissa is an abuse of discretion.

{¶75} Accordingly, Nathan's ninth assignment of error is sustained.

{¶76} Having found error prejudicial to the appellant herein in the particulars assigned and argued in the fourth, fifth, and ninth assignments of error, we reverse the judgment of the trial court as it relates to the award of attorney fees in excess of $400, the issuance of a void purge condition, and the allocation of the tax exemption to the nonresidential parent. We affirm the judgment of the trial court in all other respects.

***Judgment Affirmed In Part,***
***Reversed In Part,***
***and Cause Remanded***

**WILLAMOWSKI and WALDICK, J.J., concur.**

Case No. 8-24-47

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellant and Appellee for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

William R. Zimmerman, Judge

John R. Willamowski, Judge

Juergen A. Waldick, Judge

DATED:
/hls

-34-